**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN H. RICHARDSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-2578-O |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, filed July 12, 2013 (doc. 5). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

This action involves the attempted foreclosure of real property located at 7007 Spanky Branch Court, Dallas, Texas 75248 (the Property). (Orig. Compl. (doc. 1-3) at 3.)[1] On June 7, 2013, John H. and Linda E. Richardson (collectively, Plaintiffs) filed this *pro se* action in state court against Ocwen Loan Servicing, LLC, as servicer for U.S. Bank, N.A., as Trustee for the Registered Holders of Aegis Asset-Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-4 (Defendant). (*Id.*)

In their verified state court petition, Plaintiffs allege that they purchased the Property in 1995. (*Id.* at 5.) They claim that in June 2012, Defendant—the loan servicer "or its predecessor",

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

increased their monthly mortgage payment from $9,885.45 to $14,847.37 without any explanation or prior notice. (*Id.*) They subsequently experienced "financial distress," and Defendant represented that it would modify their loan to reduce their monthly payments and extend the repayment period. (*Id.*) Instead of modifying their loan, however, Defendant purportedly filed an action in state court to foreclose on the Property on March 25, 2013. (doc. 1-3 at 5; P. Resp. (doc. 13) at 2.)

Plaintiffs dispute Defendant's attempt to foreclose on the Property, claiming that it "prematurely declared [them] in default" on September 5, 2012, even though it did not begin servicing their loan until December 4, 2012. (doc. 1-3 at 5.) They also contend that the foreclosure process was not "properly followed" because "[t]here is no clear chain of title" to the Property and Defendant has failed to produce a "Special Warranty Deed." (*Id.* at 6.) The complaint asserts claims for quiet title, common law fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation. (*Id.* at 6–10.) They seek actual, statutory, and exemplary damages, attorney's fees, and injunctive relief to restrain Defendant from foreclosing on the Property. (*Id.* at 6–7, 11.)

Defendant removed the action to federal court on July 3, 2013, based on diversity jurisdiction, and moved to dismiss the complaint a few days later. (docs. 1 and 5.) With a timely-filed response (doc. 13) and reply (doc. 14), the motion is now ripe for recommendation.

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 5.)

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely

granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is also well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).

Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to

relief.'"

*Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570).  When plaintiffs "have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*,

550 U.S. at 570.

**B.    Quiet Title**

Defendant first moves to dismiss Plaintiffs' quiet title claim, arguing that their allegations

fail to raise a reasonable inference that they have superior title to the Property or that Defendant's

claim to the Property is invalid or unenforceable.  (doc. 5 at 1–2, 4–5.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the

invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32,

42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest

equity to remove from his way to legal title any unlawful hindrance having the appearance of better

right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation

and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest

in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the

claim, although facially valid, is invalid or unenforceable. *Hurd v. BAC Home Loans Servicing, LP*,

880 F. Supp. 747, 767 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-

CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).

The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to

enable the court to see he or she has a right of ownership that will warrant judicial interference."

*Id.* (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  The

plaintiff must prove and recover on the strength of his own title, not on the weakness of his

adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Although Plaintiffs refer to a quiet title claim by name, they fail to allege sufficient facts in support.[2]  The only allegations in the complaint that could relate to a quiet title cause of action are the contentions that they purchased the Property in 1995, and that the foreclosure process was not "properly followed" because Defendant declared them in default "prematurely."  (*See* doc. 1-3 at 5.)  These allegations fail to raise a reasonable inference that Plaintiffs have superior title to the Property vis-à-vis Defendant, or that Defendant has asserted a claim against the Property that is invalid or unenforceable.  Since their quiet title claim is factually unsupported, it should be dismissed for failure to state a claim.  *See Turner v. AmericaHomeKey Inc.*, 514 F. App'x 513, 516–17 (5th Cir. 2013) (affirming dismissal of quiet title claim because the "dearth of factual allegations [was] fatal to [the plaintiff's] claim" since his complaint "contained no assertions regarding the strength of [his] own title" and "focused entirely on the alleged weaknesses of the defendants' interest in the property").

## C.   **Common Law Fraud**

Defendant next seeks dismissal of Plaintiffs' claim for common law fraud on grounds that the claim does not meet the heightened pleading requirements of Rule 9(b).  (doc. 5 at 5–6.)[3]

---

[2]  Most, if not all, of the allegations in the section titled "first cause of action application for automatic stay and dismissal and quiet title" relate to Plaintiffs' request for injunctive relief to prevent Defendant from foreclosing on the Property. (*See, e.g.*, doc. 1-3 at 6 ("Unless this Court immediately and automatically . . . prohibits [Defendant] from posting the Property for foreclosure . . ., Plaintiffs will suffer immediate and irreparable injury. . . .").)

[3]  Defendant also argues that Plaintiffs' fraud claim is barred by the economic loss doctrine.  (doc. 5 at 5.)  "The economic-loss rule bars tort actions based solely on recovery of the loss or damage to the subject of a contract."  *New Century Fin., Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915 (5th Cir. 2012) (citation omitted).  To determine whether a tort action is merely a "repackaged" breach of contract claim, courts consider: (1) whether the claim is for breach of a duty created by contract, as opposed to a duty imposed by law; and (2) the nature of the alleged injury. *Hurd*, 880 F. Supp. 2d at 763 (citation omitted).  Several courts in the Fifth Circuit have held that this doctrine does not apply

5

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).   Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).   "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).   "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343

---

to fraud claims. *See, e.g.*, *Gruber v. Deuschle*, No. A:300-CV-0017-L, 2002 WL 523957, at *7 (N.D. Tex. Apr. 5, 2002) (fraudulent inducement claims are not subject to the economic loss rule under Texas law); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07-CV-111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties had an independent duty not to commit the intentional tort of fraud); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. No. 4:10-CV-144, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) (to same effect).   Accordingly, the economic loss rule does not dispose of Plaintiffs' fraud claim.

F.3d 719, 724 (5th Cir. 2003) (citation omitted).

According to the complaint, Defendant—the mortgage servicer, "made representations to Plaintiffs that they would be considered for a loan modification and should expect [a] significant reduction in interest rate[]."  (doc. 1-3 at 8.)  Defendant allegedly told them it would reduce their monthly mortgage payment to help them avoid defaulting on their loan.  (*Id.*)  They claim Defendant's statements were "material and false because [Defendant] had no intention of extending a loan modification", it made these misrepresentations "recklessly" and "with the intent that Plaintiffs act on [them]", and they "relied on the [mis]representations" and were injured as a result. (*Id.*)

Although Plaintiffs attempt to establish the "who, what, when, and where" with respect to their fraud claim, they fail to assert any facts to support their allegations that Defendant intended them to rely, or that they did rely, on its purported misrepresentations.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) … The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in original).  They do not state, for instance,  that they qualified, or that they even applied, for a loan modification.  Lastly, they fail to assert any facts indicating how they were injured as a result of Defendant's purported promise to modify their loan. Accordingly, their fraud claim should be dismissed under Rule 9(b) for failure to meet the rule's heightened pleading requirements.

**D.**      **Breach of Contract**

Defendant urges dismissal of Plaintiffs' claim for breach of contract on grounds that they

7

"have failed to allege either (a) the existence of a contract to which [Defendant] is a party; or (b) Plaintiffs' own performance or tender of performance on the contract." (doc. 5 at 7.)

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd*, 880 F. Supp. at 759 (citations omitted).

Plaintiffs allege that "the promissory note related to the Property" is a valid contract between them and Defendant. (doc. 1-3 at 9.) They claim they "performed, tendered performance, or were excused from performing their contractual obligations." (*Id.*) Defendant purportedly "breached the contract" by establishing "an escrow deficiency account" to pay their property taxes even though they "had [met] their tax obligations pursuant to the loan agreement." (*Id.*) Elsewhere in their complaint, they assert that Defendant was only the mortgage servicer, not the lender on their loan. (*See id.* at 5.) In their response to Defendant's motion, they explain that the original lender was "AEGIS Funding Corporation." (doc. 13 at 3.) They also contend that Defendant "was not legally empowered to act on behalf of AEGIS" and "had no legal right to . . . transact business of any kind related to [their] loan." (*Id.*) Viewed in the light most favorable to Plaintiffs, their pleadings fail to raise a reasonable inference that there was a valid contract between them and Defendant, or that Defendant was somehow liable to them for the lender's obligations under the lending agreement. Since they have failed to state an essential element of their breach of contract claim, the claim fails and is also subject to dismissal.

E.     **Breach of Fiduciary Duty**

According to Defendant, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law

because "Texas courts have declined to recognize the existence of a fiduciary relationship" between

a mortgagee or mortgage servicer and a borrower.  (doc. 5 at 9.)

To state a claim for breach of fiduciary duty in Texas, a plaintiff must allege, among other

things, that a fiduciary relationship existed between him and the defendant.  *Navigant Consulting,*

*Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447

(Tex. App.—Dallas 2006, pet. denied)). "Texas law recognizes two types of fiduciary relationships."

*NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 6220348, at *3 (N.D. Tex. Dec. 14, 2011).

The first is a formal fiduciary relationship, such as between attorney and client, principal and agent,

business partners, and joint venturers. *Id.* (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674

(Tex. 1998)). The second is an informal relationship that "may arise from a moral, social, domestic,

or purely personal relationship of trust and confidence." *Id.* (citing *Associated Indem. Corp. v. CAT*

*Contracting Co.*, 964 S.W.2d 276, 287–88 (Tex. 1998)).  This occurs, for example, "when the parties

have dealt with each other in such a manner for a long period of time that one party is justified in

expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674. It may also arise in

situations where "influence has been acquired and abused" or "confidence has been reposed and

betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287.

In Texas, "[t]he relationship between a borrower and lender is usually neither a fiduciary

relationship nor a special relationship." *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675

(Tex. App.—Houston [1st Dist.] 1996, pet. denied).  The borrower's "subjective trust in the [lender],

by itself, is not enough to transform the arms-length dealings of a debtor and creditor into a fiduciary

relationship." *Greater Sw. Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n*, 786 S.W.2d 386,

391 (Tex. App.—Houston [1st Dist] 1990, writ denied) (citation omitted).  Similarly, courts have

held that a mortgage servicer, "as the entity servi[cing] the mortgage on behalf of the mortgagee, [] does not owe [the borrower] a fiduciary duty as a matter of law." *Dupree v. EMC Mortgage Corp.*, No. 4:10-CV-356, 2011 WL 147683, at *4 (E.D. Tex. Jan. 7, 2011), *rec. adopted*, 2011 WL 147296 (E.D. Tex. Jan. 18, 2011); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 800–01 (Tex. App.—Tyler, 1999, no pet.).  This is because the mortgage servicer's duties are purely contractual, since its sole "obligation . . . is to collect the payments due under the note and deed of trust and disburse those monies as required by the [loan] documents." *White*, 995 S.W.2d at 801. Consequently, the "[p]ayment of funds by the mortgagor into an escrow account" managed by the mortgage servicer on behalf of the mortgagee "to meet tax and insurance obligations on the property as they accrue does not create a trust or fiduciary relationship" between the servicer and the borrower. *Id.*; *accord Townsend v. BAC Home Loans Servicing, L.P.*, 461 F. App'x 367, 372 (5th Cir. 2011) (per curiam) (holding that the mortgage servicer did not breach—or even owe—a fiduciary duty to the borrower by simply "paying the delinquent property taxes and establishing an escrow account").

Plaintiffs contend that Defendant, as the mortgage servicer, "had a fiduciary relationship with [them] arising under the terms of the original promissory note." (doc. 1-3 at 9.)  Defendant allegedly became their agent when it established an escrow account and increased their monthly mortgage payments to pay their property taxes.  (*Id.* at 9–10.)  According to Plaintiffs, Defendant breached its fiduciary duty by paying their property taxes even though those payments were  "redundant and unnecessary" because Plaintiffs were current on their tax obligations.  (*Id.*)

First, Plaintiffs' allegation that Defendant's establishing and managing an escrow account to pay their property taxes created a fiduciary relationship between them fails as a matter of law.

*See Townsend*, 461 F. App'x at 372; *White*, 995 S.W.2d at 801.  Moreover, Plaintiffs fail to allege that the parties dealt with each other "in such a manner for a long period of time" that they were justified in expecting Defendant to act in their best interest.  *See Morris*, 981 S.W.2d at 674. According to their own complaint, Defendant did not begin servicing their loan until December 4, 2012, only six months before they filed this action.  (*See* doc. 1-3 at 5.)  In their response to Defendant's motion, they assert that Defendant "acquired influence and confidence," "had excessive balance of power [and] control," and led them to believe it could "negotiate [their] mortgage modification[]."  (doc. 13 at 8.)  These statements read more like a recitation of the elements of a claim for breach of fiduciary duty than specific allegations of wrongdoing.  Even if considered, the new allegations fail to "nudge" their claim "across the line from conceivable to plausible."  *See Twombly*, 550 U.S. at 570.  Plaintiffs' claim for breach of fiduciary duty should be dismissed for failure to state a claim.

## F.      Negligent Misrepresentation

Defendant next argues that Plaintiffs fail to state a plausible claim for negligent misrepresentation because their "allegations amount to little more than a mere formulaic recitation of the elements, which is insufficient under [Rule] 12(b)(6)."  (doc. 5 at 9–10.)[4]

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the

---

[4] Defendant also contends that Plaintiffs' claim for negligent misrepresentation is barred by the economic loss doctrine. (doc. 5 at 2, 10.)  Courts in this Circuit have held that even absent a special relationship between contracting parties, there is "always a duty to correct one's own prior false or misleading statements."  *See e.g.*, *Hurd*, 880 F. Supp. 2d at 763; *Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. Civ. A. 304-CV-1265-M, 2005 WL 1704793, at *6 (N.D. Tex. July 19, 2005) (citing *Trustees of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994)).  Here, Plaintiffs claim that Defendant made false and misleading representations to them regarding their monthly payments and the escrow account without exercising reasonable care and competence.  (doc. 1-3 at 10.)  If their allegations are true, Defendant owed them a duty to correct its misstatements, and such a duty arose apart from the lending contract.  Plaintiffs' negligent misrepresentation claim is not barred by the economic loss doctrine. *See Hurd*, 880 F. Supp. 2d at 763–64.

defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Chance v. Aurora Loan Services, L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *5 (N.D. Tex. Mar. 19, 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) and *Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied)).

Plaintiffs allege that Defendant represented that pursuant to the terms of their loan agreement, their monthly mortgage payment consisted of only the "principal and interest", and they would "self-fund any insurance and tax obligations." (doc. 1-3 at 10.) They claim Defendant "did not exercise reasonable care or competence" in failing to notify them that it would establish an escrow account and increase their monthly payment to cover their property taxes. (*Id.*) Although Defendant never explained the reason for the unexpected payment increase, they relied on its representations and made the increased payments "as requested." (*Id.* at 5, 10.) As with their fraud claim, their allegations fail to state a plausible claim that they were "injured" as a result of Defendant's alleged conduct. Specifically, they fail to explain or assert any facts to indicate how Defendant's establishment of an escrow account for the purpose of paying their property taxes harmed them. Accordingly, this claim also fails and should be dismissed.[5]

---

[5] In their response to Defendant's motion, Plaintiffs allege that U.S. Bank appointed Defendant to service their mortgage on June 25, 2010, by executing a "limited power of attorney." (doc. 13 at 3.) They claim this appointment was invalid and did not "empower" Defendant to "transact any business" related to their loan because U.S. Bank did not acquire, and therefore had no rights in, their loan until December 4, 2012. (*Id.*) They also appear to challenge the validity of the December 2012 assignment of their loan from AEGIS, the original lender, to U.S. Bank via Mortgage Electronic Registration System (MERS). (*See id.* at 4.) They essentially claim that MERS could not assign their loan to U.S. Bank

G.     **Injunctive Relief**

In addition to their substantive claims, Plaintiffs also request injunctive relief to enjoin Defendant from foreclosing on the Property. (*See* doc. 1-3 at 6–7.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Because Plaintiffs' substantive claims are subject to dismissal on the merits, they cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. Their request for injunctive relief should therefore be denied.

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See*

---

because the promissory note "did not empower MERS [to be] the actual legal trustee." (*Id.*) They make these allegations in support of their claims for common law fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation. (*See id.* at 3–5.) The Fifth Circuit has held that under Texas law, an obligor may defend against an assignment of his mortgage on grounds that the assignment is void, but not on grounds that render the assignment merely voidable at the election of the assignor. *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013); *see also Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. App.—Houston [1st Dist.] 1975, no writ). Here, Plaintiffs have not asserted sufficient facts in their response to raise a reasonable inference that they have standing to challenge MERS's purported assignment of their mortgage to U.S. Bank because they do not state whether the assignment was void or voidable. (*See* doc. 13.)

13

*Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs have not amended their complaint since they filed this action in state court. They have failed to plead viable claims for quiet title, breach of contract, breach of fiduciary duty, and negligent misrepresentation because their allegations are factually unsupported.  Their claim for common law fraud is also subject to dismissal for failure to meet the heightened pleading requirements of Rule 9(b).  Since it does not appear that they have stated their best case to the Court with respect to any of their claims, they should be accorded an opportunity to amend their complaint to state a claim for relief.

## IV.  RECOMMENDATION

If Plaintiffs do not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED** and all of Plaintiffs' claims against Defendant should be dismissed with prejudice.  If Plaintiffs timely file an amended complaint, however, Defendant's motion to dismiss should be **DENIED as moot** and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 21st day of February, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE