**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN H. RICHARDSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-CV-2578-O** |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated March 12, 2014, this case was referred for pretrial management.  Before the Court is *Defendant's Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(B)(6)*, filed March 14, 2014 (doc. 20).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

**I.  BACKGROUND**

This action involves the attempted foreclosure of real property located at 7007 Spanky Branch Court, Dallas, Texas 75248 (the Property).  (Orig. Compl. (doc. 1-3) at 3.)[1]  On June 7, 2013, John H. and Linda E. Richardson (collectively, Plaintiffs) filed this *pro se* action in state court against Ocwen Loan Servicing, LLC (Defendant), as servicer for U.S. Bank, N.A., as Trustee for the Registered Holders of Aegis Asset-Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-4 (U.S. Bank), asserting claims for quiet title, common law fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation.  (*Id.* at 6–10.)  They sought actual, statutory, and exemplary damages, attorney's fees, and injunctive relief to restrain Defendant from

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

foreclosing on the Property.  (*Id.* at 6–7, 11.)  Defendant removed the action to federal court based on diversity jurisdiction on July 3, 2013, and moved to dismiss the complaint a few days later. (docs. 1 and 5.)  On February 21, 2014, dismissal was recommended for failure to state a claim. (doc. 15.)

On March 7, 2014, Plaintiffs filed their amended complaint.  (doc. 16.)  They assert claims for negligent misrepresentation, breach of fiduciary duty, breach of contract, and common law fraud. (*Id*. at 8-27.)  They seek actual damages, statutory or treble damages, exemplary damages, and attorneys' fees.  (*Id*. at 32.)

Plaintiffs contend that the Property is their homestead residence.  (*Id*. at 4.)  On March 25, 2013, Defendant filed an "Order for Foreclosure Concerning 7007 Spanky Branch Court" in state court.  (*Id*.)  Attached as exhibits were: (i) a Texas Home Equity Note dated June 23, 2005 (the Note), that identifies AEGIS Funding Corporation (AEGIS) as Lender; (ii) a Texas Home Equity Security Instrument (First Lien) (the Deed of Trust) that identifies Plaintiffs as borrowers, AEGIS as lender, Kenneth Weleski as Trustee, and Mortgage Electronic Registration Systems (MERS) as nominee for the Lender and Lender's successors and assigns and as beneficiary under the Deed of Trust; (iii) a Limited Power of Attorney dated June 25, 2010 (the POA), in which U.S. Bank "constituted and appointed" Defendant as "servicer" to "transact business of any kind regarding the loan"; and (iv) a Transfer of Lien dated December 4, 2012 (the Transfer of Lien), in which MERS, as nominee for AEGIS, assigned to U.S. Bank all of the "right, title, and interest owned or held" by MERS in the Deed of Trust.[2]  (*Id*. at 4-5.)

---

[2]  Plaintiffs claim that the Transfer of Lien "forever assigns all of the right, title and interest owned or held by said Assignor in and to the following instrument describing land therein duly recorded in the Official Public Record of Real Property/Mortgage/Deed of Trust Records of Dallas County, Texas regarding Plaintiffs' property described above."  (doc. 16 at 5.)  This statement presumes that the Transfer of Lien assigned MERS's rights, title, and interest

In support of their common law fraud claim, Plaintiffs detail several telephone and written communications with Defendant's representatives from June 2011 until October 2012 concerning loan modifications they requested.  (*Id*. at 17-26.)  Plaintiffs contend that they requested a loan modification in June 2011, and submitted an application and other requested paperwork for a loan modification.  (*Id*. at 18-19.)  Defendant's representatives allegedly represented a couple of times that they would call Plaintiffs at certain times but failed to do so.  (*Id*. at 18.)  In September 2011, Plaintiffs received a letter from Defendant informing them that they were denied a Home Affordable Modification Program (HAMP) loan modification because their loan exceeded the "HAMP limit of $729,750," and that they were denied a loan modification because "modified payment options available under established guidelines required higher monthly income levels than the amount provided in [their] applications."  (*Id*. at 19-21.)  Defendant also informed Plaintiffs that their account was 72 days past due and in default.  (*Id*. at 20.)  However, Plaintiffs allegedly were able to make a payment that "took [their] mortgage out of default."  (*Id*. at 20-21.)

Plaintiffs contend that Defendant's representatives then discussed the option of a Shared Appreciation Mortgage Modification (SAMM) with them and sent them a new loan modification application on May 2, 2012.  (*Id*. at 21.)  Plaintiffs allege that they sent Defendant a completed modification package on May 14, 2012. (*Id*.) Defendant's representatives promised to call Plaintiffs regarding the modification, but "a call from [Defendant] or message was never received by Plaintiffs." (*Id*. at 22.) Defendant sent "modification denial letters" to Plaintiffs on May 21, 2012.  (*Id*.)  The denial letters made no mention of the type of modification that was considered.  (*Id*.)

---

in the Deed of Trust to U.S. Bank.

On May 25, 2012, Defendant's representatives informed Plaintiffs via telephone that they were "halfway through the process," with an in-house modification, but failed to mention the denial letters. (*Id.* at 22-23.)  They also told Plaintiffs that SAMM was "still a potential," and if their income changed, Defendant could "rework the SAMM." (*Id.* at 23.)  Plaintiffs contend that on July 3, 2012, Defendant's representatives told them that due to a "new procedure for HAMP," Defendant would again review them for HAMP. (*Id.* at 24.)  Plaintiffs allegedly updated Defendant "on future income potential for the next 3-4 weeks," but on August 10, 2012, they were told the HAMP government modification and the in-house modification were both denied. (*Id.* at 24-25.)  They were again told that the government could "rework the HAMP." (*Id.* at 25.)  Plaintiffs claim that on September 1, 2012, they made a payment of $15,341.61 over the phone, and they were informed that due to the imposition of an additional escrow payment that was unilaterally instituted by Defendant, Defendant required a higher monthly income level in order for Plaintiffs to qualify for modifications. (*Id.*) Defendant's representatives allegedly told them that if the "loan payments go past 79 days," the loan could be reinstated for a lump sum payment of $47,745.23 for the months of July, August, and September 2012. (*Id.*)  On October 17, 2012, Defendant's representatives stated that $15,341.61 of the amount due as of October 17, 2012, was 77 days past due and should be paid "prior to 79 days." (*Id.*)

On March 14, 2014, Defendant moved to dismiss Plaintiffs' amended complaint. (doc. 20.) With a timely-filed response (doc.22) and reply (doc. 23), the motion is now ripe for recommendation.

## II.  MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' amended complaint under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  (doc. 20.)

A.  **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is also well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).

Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when

it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## B.      Defendant's Appointment as Servicer

Defendant first seeks dismissal of all of Plaintiffs' claims based on their allegation that U.S. Bank's appointment of Defendant as servicer is void, and that it therefore does not have the power to act as servicer on behalf of U.S. Bank.  (doc. 20 at 7-8.)

Plaintiffs allege that U.S. Bank appointed Defendant to service their mortgage on June 25, 2010, pursuant to the POA.  (doc. 16 at 6-7.)  However, they contend that assignment of the loan[3] to U.S. Bank via the Transfer of Lien from MERS was not made until December 4, 2012.  (*Id.* at 6.) Relying on the Transfer of Lien, Plaintiffs argue that the appointment was invalid and did not "empower" Defendant to "transact any business" related to their loan because U.S. Bank did not acquire, and therefore had no rights in, their loan until December 4, 2012.  (*Id.* at 7.)  They argue that based on "the documentation provided," U.S. Bank's appointment of Defendant as servicer was void "during the period of June 25, 2010 until December 3, 2012."  (*Id.* at 6.)  They make this

---

[3]Despite the purported language of the document (*see* doc. 16 at 5) and the title of it, Plaintiffs refer to the Transfer of Lien as transferring their loan.  It is not clear whether they contend that the Transfer of Lien transferred the Note, the Deed of Trust, or both.

allegation in support of their claims for common law fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation.  (*Id.* at 6.)

MERS maintains an electronic database for registering mortgages and "tracking beneficial ownerships in, and servicing rights to, mortgage loans." *Huml v. Mortgage Electronic Registration Systems, Inc.*, No. EP-12-cv-00146, 2012 WL 5984821, at *3 (W.D.Tex. Oct. 25, 2012).  Entities, such as mortgage lenders, subscribe to MERS and contractually agree to appoint it as their common agent on all the mortgages they register in MERS.  *Id*; *Robeson v. Mortgage Electronic Registration Systems, Inc.*, No. 02-10-00227-cv, 2012 WL 42965, at *5 (Tex. App.–Fort Worth Jan. 5, 2012, pet. denied).  They pay annual fees for the tracking of ownership and transfers of their mortgages.  *Huml*, 2012 WL 5984821, at *3; *Robeson*, 2012 WL 42965, at *5.  When a mortgage or deed of trust is executed through a lender who is a MERS member and registered in MERS, it is recorded in the real property records with MERS named on the instruments as beneficiary or mortgagee of record, as nominee for the lender and its successors and assigns.  *Id*.  The original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, and because MERS is tracking the transfers, these assignments are not recorded in the real property records.  *Huml*, 2012 WL 5984821, at *4; *Robeson*, 2012 WL 42965, at *5.  When the promissory note is sold to a MERS member, MERS remains the mortgagee or beneficiary, as the nominee for the new beneficial owner of the note.  *Huml*, 2012 WL 5984821, at *4.  Only when a MERS member assigns its interest in the mortgage to a nonmember will that assignment be recorded in the real property records.  *Huml*, 2012 WL 5984821, at *4; *Robeson*, 2012 WL 42965, at *5.  MERS will then deactivate the loan within its system.  *Id*.  Accordingly, interests in notes and mortgages can be transferred without assignment documents having to be recorded.  *Robeson*, 2012 WL 42965, at *5.

In fact, "[i]t is a general practice for MERS to assign a mortgage to its beneficial owner some time *after* recording that owner in its system, because an assignment, while unnecessary to transfer ownership, may be a prerequisite to foreclosure under a particular state's law." *Colton v. U.S. Nat. Bank Ass'n*, No. 3:12-cv-3584, 2013 WL 1934560, at *4 (N.D.Tex. May 10, 2013) (emphasis in original).

Here, according to the amended complaint, the deed of trust named MERS as beneficiary and nominee for the original lender and its successors and assigns. (doc. 16 at 4.) In light of MERS's electronic tracking system, the fact that the assignment from MERS to U.S. Bank was allegedly dated December 4, 2012 does not mean that the lender's interest in the Note and Deed of Trust was not transferred to U.S. Bank before that date. As noted, MERS-member lenders often transfer beneficial ownership or servicing rights to other MERS members without executing or recording an assignment. *See Robeson*, 2012 WL 42965, at *5; *Colton*, 2013 WL 1934560, at *4. Plaintiffs' allegations do not support a reasonable inference that the appointment of Defendant as servicer by U.S. Bank via the POA was void because the POA was executed after the date of the assignment from MERS to U.S. Bank. Plaintiffs do not allege that ownership of the Note or Deed of Trust was not properly transferred within the MERS system or that ownership was not transferred via an indorsement or otherwise.[4] *See Colton*, 2013 WL 1934560, at *4. Because the assignment of the

---

[4]Defendant also points out that promissory notes, as negotiable instruments, can be transferred by indorsement as opposed to an assignment. (doc. 20 at 7.) The holder of a negotiable instrument may "negotiate," or transfer, the instrument by transferring possession of the instrument to a person who thereby becomes the instrument's holder. Tex. Bus. & Com Code § 3.201(a); *see Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp.2d 731, 741 (E.D.Tex. 2013). If the instrument is payable to that identified person, then transfer of possession of the instrument and its indorsement by the holder are all that is needed to "negotiate," or transfer the instrument. Tex. Bus. & Com Code § 3.201(b); *Sgroe*, 941 F. Supp.2d at 741; *Dempsey v. U.S. Bank Nat'l*, 2012 WL 2036434, at *4 (E.D. Tex. Jun. 6, 2012). If the instrument is payable to bearer, then transfer of possession alone is enough. *Id.* Accordingly, transfer of the Note to U.S. Bank, and with it the right to enforce the Note, may have occurred via indorsement and transfer of possession. Also, "[w]hen a mortgage note is transferred, the mortgage is also automatically transferred to the

8

mortgage was not necessary to transfer ownership to U.S. Bank, Plaintiffs have failed to state a plausible claim that U.S. Bank's appointment of Defendant as servicer was void. To the extent Plaintiffs' claims for negligent misrepresentation, breach of contract, breach of fiduciary duty, and common law fraud are based on this argument, Defendant's motion to dismiss those claims should be granted.

## C.    Negligent Misrepresentation

Defendant moves to dismiss Plaintiffs' negligent misrepresentation claim on grounds that they failed to plead any facts supporting their allegations that U.S. Bank's appointment of Defendant as servicer is void, and because it is based on alleged promises of future conduct. (doc. 20 at 9.)

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Chance v. Aurora Loan Services, L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *5 (N.D. Tex. Mar. 19, 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) and *Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied)).

Plaintiffs allege that Defendant fraudulently represented itself as servicer of their mortgage, but it had no legal right to collect or "transact business of any kind" related to their loan. (*Id.* at 8-9.)

---

mortgage note transferee pursuant to the general common law rule that 'the mortgage follows the note.'" *Dempsey*, 2012 WL 2036434, at *4 (quoting *J.W.D., Inc. v. Federal Ins. Co.*, 806 S.W.2d 327, 329-30(Tex. App.–Austin 1991, no writ).

They contend that they in good faith relied on mailed notices that Defendant was the new servicer. (*Id.* at 9.)  Plaintiffs also allege that Defendant "supplied false and fraudulent information to Plaintiff[s] via inaccurate information convey[ed] during the mortgage modification process". (doc. 16 at 8.)  They contend that between August 2011 and May 2012, they twice attempted to modify their loan, and Defendant "did not exercise a reasonable standard of care" in obtaining information from Plaintiffs or in communicating information to them.  (*Id.*)  Defendant's employees were allegedly "not aware of specific facts of certain modifications, criteria for those modifications[,] timely understanding of activities and decisions rendered by others in the Defendant's organization, and did not follow through on prescribed, timely and commonly accepted methods of notifications of decisions or promised communications." (*Id.*)  Plaintiffs contend that they suffered pecuniary loss in justifiably relying on Defendant's representations "of certain loan modification options being available and considered." (*Id.*)  They allege that they were not advised of facts or given valid business solutions for over a one-year period. (*Id.* at 8-9.)  Defendant's inability to effectively negotiate a SAMM modification, which would have potentially reduced their principal balance and monthly payments, "exacerbated" Plaintiffs' ability to "service other debt and default on over $250,000 in other documented debt obligations to other creditors." (*Id.* at 9.)

Plaintiffs' amended complaint recounts conversations with Defendant's representatives in which they were informed that they may qualify for a loan modification and repeatedly told that certain modification options were available and being considered.  (*See id.* at 18-26.)  They were continually denied loan modifications, however. (*Id.*)  Defendant's representatives also allegedly failed to call Plaintiffs as represented.  (*See id.* at 18, 22.)

As discussed, Plaintiffs have failed to state a plausible claim that U.S. Bank's appointment

of Defendant as servicer was void.  Their negligent misrepresentation claim based on Defendant's representations regarding its role as servicer of Plaintiffs' loan therefore also fails. Additionally, Defendant's purported representations that certain loan modifications options were available and being considered, and that Plaintiffs would be called at certain times regarding a loan modification are statements of future action.  *See James v. Wells Fargo Bank, N.A.*, 533 Fed. Appx. 444, 448 (5th Cir. 2013) (finding "alleged promises that plaintiffs would be eligible for HAMP and the foreclosure sale would be postponed" were promises of future conduct and therefore "not actionable as a negligent misrepresentation tort"); *Westinde v. JP Morgan Chase Bank, N.A.*, No. 3:13-cv-3576, 2014 WL 4631405, at *10 (N.D.Tex. Sept. 16, 2014)(finding purported representations that Plaintiff "would" obtain a loan modification could not form the basis of a negligent misrepresentation claim because it was a statement of future action); *Wiley v. U.S. Bank, N.A.*, No. 3:11-cv-1241, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012) (finding plaintiff's claims relating to promises to provide a loan modification and promises not to foreclose constituted promises of future conduct and could not form the basis of a negligent misrepresentation claim).  Plaintiffs' allegations therefore cannot form the basis of a negligent misrepresentation action.  Accordingly, Defendant's motion to dismiss Plaintiffs' negligent misrepresentation claim should be granted.

**D.**     **Breach of Contract**

Defendant urges dismissal of Plaintiffs' claim for breach of contract on grounds that it is not obligated under the mortgage documents to modify Plaintiffs' loan, and Plaintiffs are not current on their mortgage payments.

The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp.2d 747,759 (N.D.Tex. 2012)(citations omitted).

Plaintiffs allege that assuming Defendant's "appointment was legitimate and not void, via the Limited Power of Attorney dated June 25, 2010," they have a valid contract.[5] (doc. 16 at 11.) They contend that they performed and upheld their obligations under the contract by informing Defendant via telephone conversations and written applications for modifications of their loan that a modification was necessary in order for them to consider meeting their obligations under the mortgage. (*Id.*) Plaintiffs allege that Defendant breached the contract "via fraudulent actions and negligent misrepresentations" outlined in the "Expanded Facts and History" section of the amended complaint. (*Id.*)  They allege that they suffered pecuniary loss and other damages because they justifiably relied on Defendant's representation that certain loan modifications were available and being considered. (*Id.*)  Defendant's failure to advise them of "reasonable and valid business solutions to achieve a viable mortgage modification" caused them to pay excessive mortgage payments for over a year and reach "a point of default." (*Id.*)

Although Plaintiffs fail to specify the "valid contract", they appear to be referring to the Note and/or Deed of Trust. (*See* doc. 16 at 11.)  They have failed to explain how they performed under either contract by simply notifying Defendant that they needed a modification in order to meet their obligations under the mortgage.  In fact, they admit to defaulting on their loan during the time the alleged breaches occurred. (*See id.* at 9, 20-21, 25); *See Kiper v. BAC Home Loans Servicing,*

---

[5]Defendant contends that Plaintiffs' allegation that they have a valid contract with Defendant is inconsistent with their argument that it was not authorized to act as the servicer of their loan, and that their claim must fail for that reason alone.  Plaintiffs assert this breach of contract claim against Defendant "assuming that its appointment was legitimate and not void." (doc. 16 at 10.)  It appears that Plaintiffs bring this claim to the extent their argument that Defendant is not authorized to act as the servicer of their loan fails.

*LP*, 884 F. Supp. 2d 561, 575 (S.D. Tex. 2012), *aff'd*, 534 F. App'x 266 (5th Cir. 2013) (holding that plaintiff's wife (the actual borrower) had "defaulted on her obligation to repay the mortgage loan, which mean[t] [plaintiff] [could not] show the second element of a breach of contract claim, performance by plaintiff").

Even assuming Plaintiffs performed under the Note and Deed of Trust, they have failed to allege that the Note and Deed of Trust required Defendant to modify their loan, and they have failed to identify specific provisions of the Note and Deed of Trust that Defendant purportedly violated. *See Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x. 233, 238 (5th Cir. 2014) (finding plaintiffs' allegation that defendants "breached the deed of trust by deliberately or negligently accelerating the note and foreclosing on their property" failed to state a claim for breach where they failed to identify which provision of the deed of trust defendants allegedly breached); *Coleman v. Bank of America, N.A.*, No. 3:11-cv-0430-G, 2011 WL 2516169, at *1 (N.D.Tex. May 27, 2011), *report and recommendation adopted*, 2011 WL 2516668 (N.D. Tex. June 22, 2011) (finding breach of contract claim failed where "plaintiff point[ed] to no specific provision in the Deed of Trust that was breached by defendant"). Viewed in the light most favorable to Plaintiffs, their pleading fails to raise a reasonable inference that Defendant breached a contract between it and Plaintiffs. Accordingly, Defendant's motion to dismiss Plaintiffs' breach of contract claim should be granted.[6]

---

[6]To the extent Plaintiffs are alleging that Defendant breached oral agreements to modify the loan, it seeks dismissal of this claim on grounds that any such agreement is unenforceable under the statute of frauds. (doc. 20 at 11-12.) In Texas, an agreement to modify an existing loan must comply with the statute of frauds. *Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.). The Texas statute of frauds provides that a loan agreement that exceeds $50,000 in value is not enforceable unless it "is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2011). Section 26.02(b) "makes unenforceable oral modifications to [such] a loan agreement... unless they fall within an exception to the statute of frauds or do not 'materially alter the obligations imposed by the original contract.'" *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012) (citation omitted). Agreements to modify the lending terms have been found to be material modifications that must be in writing. *See, e.g.*, *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984); *see also Edward Scharf Associates,*

E.       **Breach of Fiduciary Duty**

According to Defendant, Plaintiffs' claim for breach of fiduciary duty fails because "in the

borrower-lender context, Texas courts have declined to recognize the existence of a fiduciary

relationship," and a mortgage servicer owes no fiduciary duty to its clients.  (doc. 20 at 13.)

To state a claim for breach of fiduciary duty in Texas, a plaintiff must allege, among other

things, that a fiduciary relationship existed between him and the defendant.  *Navigant Consulting,*

*Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447

(Tex. App.—Dallas 2006, pet. denied)). "Texas law recognizes two types of fiduciary relationships."

*NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 6220348, at *3 (N.D. Tex. Dec. 14, 2011).

The first is a formal fiduciary relationship, such as between attorney and client, principal and agent,

business partners, and joint venturers.  *Id.* (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674

(Tex. 1998)). The second is an informal relationship that "may arise from a moral, social, domestic,

or purely personal relationship of trust and confidence."  *Id.* (citing *Associated Indem. Corp. v. CAT*

*Contracting Co.*, 964 S.W.2d 276, 287–88 (Tex. 1998)).  This occurs, for example, "when the parties

have dealt with each other in such a manner for a long period of time that one party is justified in

expecting the other to act in its best interest."  *Morris*, 981 S.W.2d at 674. It may also arise in

situations where "influence has been acquired and abused" or "confidence has been reposed and

betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287.  This duty is not created lightly, however.

---

*Inc. v. Skiba*, 538 S.W.2d 501, 502 (Tex. Civ. App.—Waco, 1976, no writ.).  Plaintiffs assert no facts showing either
that their mortgage (or the amount to be modified) was less than $50,000, or that Defendant's alleged promises were
at some point reduced to writing.  (*See id.*)  They also fail to allege or assert any facts indicating that an exception to
the statute of frauds applies here.  Accordingly, any claim for breach of oral promises to modify the mortgage should
be dismissed for failure to state a claim.  *See Hurd*, 880 F. Supp. 2d at 759 (dismissing the plaintiff's "claim for
breach of a promise to modify" where the promise was barred by the statute of frauds and no exception applied).

14

*Id.* "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.*

In Texas, "[t]he relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship." *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, pet. denied). The borrower's "subjective trust in the [lender], by itself, is not enough to transform the arms-length dealings of a debtor and creditor into a fiduciary relationship." *Greater Sw. Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist] 1990, writ denied) (citation omitted). Similarly, courts have held that a mortgage servicer, "as the entity servi[cing] the mortgage on behalf of the mortgagee, [] does not owe [the borrower] a fiduciary duty as a matter of law." *Dupree v. EMC Mortgage Corp.*, No. 4:10-CV-356, 2011 WL 147683, at *4 (E.D. Tex. Jan. 7, 2011), *rec. adopted*, 2011 WL 147296 (E.D. Tex. Jan. 18, 2011); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 800–01 (Tex. App.—Tyler, 1999, no pet.). This is because the mortgage servicer's duties are purely contractual, since its sole "obligation . . . is to collect the payments due under the note and deed of trust and disburse those monies as required by the [loan] documents." *White*, 995 S.W.2d at 801.

Plaintiffs acknowledge in the amended complaint that mortgage servicers do not owe borrowers a fiduciary duty as a matter of law. (doc. 16 at 12.) They contend, however, that they were led to believe that Defendant had "full responsibility to modify the loan agreement." (*Id.*) They state that to their knowledge, Defendant did not discuss with the lender the "most reasonable course of action to develop the modification that could best meet the needs of both Plaintiff[s] and [the lender]." (*Id.* at 13.) Defendant "unilaterally acted as the sole arbiter for [the lender]," and the decisions regarding the modification were not approved by the lender. (*Id.*) According to Plaintiffs,

15

a fiduciary relationship arose via Defendant's abuse of its influence, betrayal of confidence, and excessive balance of power, control and influence which led Plaintiffs to believe Defendant had the ability to negotiate modifications of the loan.  (*Id*.)  Plaintiffs contend that even in situations where there is generally no special relationship, extraneous facts or party conduct, such as excessive control or influence, may lead to a finding of a special relationship.  (*Id*. at 14.)

Plaintiffs fail to allege that "a special relationship of trust and confidence" existed "prior to, and apart from," the mortgage documents.  *See Associated Indem. Corp.*, 964 S.W.2d at 287.  They do not allege any contact or communication with Defendant outside of the loan transaction.  Even assuming that Defendant did not have authority to enter into modification discussions with Plaintiffs, and it therefore abused its influence and betrayed Plaintiffs' confidence, there was no informal fiduciary duty between Plaintiffs and Defendant.  *See id.*

Moreover, Plaintiffs fail to allege that the parties dealt with each other "in such a manner for a long period of time" that they were justified in expecting Defendant to act in their best interest.  *See Morris*, 981 S.W.2d at 674.  According to the amended complaint, Defendant did not begin servicing their loan until December 4, 2012, only six months before they filed this action.  (*See* doc. 16 at 6.)  Plaintiffs' claim for breach of fiduciary duty should be dismissed for failure to state a claim.

## F.    **Common Law Fraud**

Defendant lastly seeks dismissal of Plaintiffs' claim for common law fraud on grounds that Plaintiffs have not alleged facts showing that Defendant made false representations with the knowledge that they were false or it recklessly made them without knowledge of their truth.  (doc. 20 at 14.)

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

The amended complaint recounts several purported telephone conversations between Plaintiffs and Defendant's representatives regarding loan payments and modifications of the loan. (doc. 16 at 18-26.)  These conversations allegedly support Plaintiffs' allegations in the original complaint of representations that they would be considered for a loan modification, they should expect a significant reduction in their interest rate, and Defendant would reduce their monthly mortgage payments to help them avoid defaulting on their loan.  (*Id*. at 16.)  Plaintiffs contend that these statements were material and false because Defendant had no intention of giving Plaintiffs a loan modification, and it made the representations recklessly and with the intention that Plaintiffs act on them.  (*Id*.)  They also contend that they relied on the misrepresentations and were injured as a result.  (*Id*.)

Although Plaintiffs recount several conversations they had with Defendant, they fail to assert any facts supporting an inference that they relied on the purported misrepresentations.  There are no allegations of any acts or omissions that they did or did not do as a result of the alleged misrepresentations.  *See Jianhua Wu v. Tang*, No. 3:10-cv-0218, 2011 WL 145259, at *9 (N.D.Tex. Jan. 14, 2011)(granting motion to dismiss common law fraud claim where plaintiffs failed to

sufficiently allege reliance on defendant's representations).  They also fail to assert facts supporting

an inference that Defendant had fraudulent intent.  *See Young v. Deutsche Bank Nat. Trust Co.*, No.

H-14-1449, 2014 WL 4386028, at *3 (S.D.Tex. Sept. 14, 2014)(finding plaintiff's allegations were

insufficient to state a claim for fraud where plaintiff alleged no specific facts supporting an inference

of fraud but merely alleged that defendant knowingly or recklessly made false statements).

Accordingly, Defendant's motion to dismiss Plaintiffs' fraud claim should be granted.

**G.     MERS's Assignment of the Deed of Trust to U.S. Bank**

Plaintiffs also appear to challenge the validity of the December 2012 assignment of their loan

from AEGIS, the original lender, to U.S. Bank via MERS.  (*See id.* at 6-7.)  They essentially claim

that MERS could not assign their loan to U.S. Bank because the promissory note "did not empower

MERS [to be] the actual legal trustee."  (*Id.* at 7.)  They make this allegation in support of their

claims for common law fraud, breach of contract, breach of fiduciary duty, and negligent

misrepresentation.  (*Id.* at 7.)  Defendant did not address this last remaining claim.[7]

Where the deed of trust expressly names MERS as a beneficiary and nominee for the lender,

it has authority to assign the deed of trust.  *See Lamb v. Wells Fargo Bank, N.A.*, 2012 WL 1888152,

at *5 (N.D. Tex. May 24, 2012); *Dempsey v. U.S. Bank Nat'l*, 2012 WL 2036434, at *5 (E.D. Tex.

Jun. 6, 2012) (citing *Eskeridge*, 2011 WL 2163989, at *5).  MERS is defined in Texas Property

Code § 51.0001(1) as a "book entry system," which is a "national book system for registering a

beneficial  interest  in  security  instrument  and  its  successors  and  assigns."     *Richardson  v.*

---

[7] Nevertheless, a court may sua sponte dismiss a claim as long as the plaintiff has notice of the court's intention and an opportunity to respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides the required notice and opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

*CitiMortgage, Inc.,* No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D.Tex. Nov. 22, 2010) (citing

Tex. Prop. Code § 51.0001(1)).  Mortgage documents, such as a deed of trust, provide for the use

of MERS and the provisions in the documents are "enforceable to the extent provided by the terms

of the documents."  *Id.*  While the note may not have specifically mentioned MERS, the note and

deed of trust must be read together in evaluating the terms and construed together as a single

instrument.  *Dempsey*, 2012 WL 2036434, at *5 (citing *Eskeridge*, 2011 WL 2163989, at *5).

 Here, according to the amended complaint, the deed of trust names MERS as beneficiary and

nominee for the original lender.  (doc. 16 at 4.)  It therefore has the authority to transfer the rights

and interests in the Note and Deed of Trust to U.S. Bank.  *See Lamb*, 2012 WL 1888152, at *5;

*Dempsey*, 2012 WL 2036434, at *5.  Plaintiffs have failed to state a plausible claim that the

December 2012 assignment of their loan from AEGIS, the original lender, to U.S. Bank via MERS

was void.  To the extent they are based on this argument, Plaintiffs' negligent misrepresentation,

breach of contract, breach of fiduciary duty, and common law fraud claims are also subject to

dismissal on this basis.

### III.  OPPORTUNITY TO AMEND

 Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

*se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D,

2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs were granted leave to file an amended complaint after dismissal of their original petition was recommended for failure to state a claim.  (*See* doc.15.)  Their first amended complaint also fails to state a viable claim against Defendant.  It therefore appears that they have alleged their best case, and no further opportunity to amend is warranted.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED,** and all Plaintiffs' claims against it should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**SO RECOMMENDED** on this 21st day of November, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE